RICHMAN LAW GROUP
Kim E. Richman (*Pro Hac Vice forthcoming*)
krichman@richmanlawgroup.com
Jaime Mak (SBN 236505)
jmak@richmanlawgroup.com
535 Mission Street
San Francisco, CA 94105
Telephone: (415) 259-5688
Facsimile: (718) 228-8522

*Additional Plaintiffs' counsel listed on signature page*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND BRANCH**

| | |
|---|---|
| **ADAM COOPER** and **RYAN MATUSZEWSKI**, individually and on behalf of other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> **THE CLOROX COMPANY,** <br><br> Defendant. | Case No. _____ <br><br> <u>**Class Action**</u> <br><br> <u>**COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750-1785, FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500, *ET SEQ*., UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200-17210, NEW YORK GENERAL BUSINESS LAW §§ 349-350, UNJUST ENRICHMENT, BREACH OF EXPRESS AND IMPLIED WARRANTIES**</u> <br><br> <u>**JURY TRIAL DEMANDED**</u> |

{00282996 }

1    Adam Cooper, a California Resident ("Plaintiff Cooper"), and Ryan Matuszewski, a New

2    York Resident ("Plaintiff Matuszewski"), (collectively, "Plaintiffs"), individually and on behalf

3    of other similarly situated individuals, allege the following Class Action Complaint against

4    defendant The Clorox Company ("Clorox" or "Defendant"), upon personal knowledge as to

5    themselves and their own acts and upon information and belief as to all other matters, based

6    upon, *inter alia*, the investigation made by their attorneys – as to all other matters, as follows:

7                                   **INTRODUCTION**

8         1.      In recent years, consumers have become significantly more aware of, and

9    concerned about, the toxicity of household cleaning products and their impact on the health of

10   themselves and their families. Consumers have also become more aware of, and concerned

11   about, the impact of these products on the environment. The ingredients in household cleaning

12   products can be inhaled, exposed to skin during use, or come in contact with food. They are also

13   regularly drained into our waterways. For these reasons, demand has increased for so-called

14   "green" products that are supposedly produced naturally, environmentally sound, and non-toxic.

15   Consumers are willing to pay a premium for such products above what they are willing to pay

16   for products that are not "green."

17        2.      Defendant Clorox manufactures, markets, and distributes for sale to consumers

18   nationwide several household cleaning products under the brand name "Green Works" (the

19   "Products," further defined below). Defendant represents that the Products are naturally derived,

20   environmentally sound, and safer alternatives to other cleaning products (including traditional

21   Clorox cleaning products).

22        3.      Over the last few years, Defendant has changed the manner in which it advertises

23   the environmental benefits of the Products. Previously, the Products' labels specified what

24   percentage of a given product was naturally derived, such as "99% naturally derived." Since

25   then, Defendant has changed the Product labels to now include the misleading representation that

26   the Products are "naturally derived," with no additional substantiation. This causes reasonable

27   consumers to believe that the Products are 100% naturally derived.

28

CLASS ACTION COMPLAINT

4.      Defendant's representations about the source and attributes of the Products' ingredients, and about the environmental soundness and safety of the Products, are not true.

5.      As detailed below, the Products are not as "naturally derived," environmentally sound, or safe as Defendant's representations lead reasonable consumers to believe.

6.      In fact, as discussed further below, the Products contain unnatural and harmful chemical ingredients including sodium lauryl sulfate ("SLS") and methylisothiazolione ("MI"). These chemicals can be dangerous to human health and to the environment. In fact, exposure to these specific are associated with skin irritation and aquatic toxicity and immune system toxicity and allergic reactions, respectively. Reasonable consumers do not expect such ingredients to be in products labeled "natural," "naturally derived," or "green."

7.      By deceiving consumers about the nature, quality, and ingredients of the Products Clorox was and is able to sell more of, or charge more for, their Green Works products than it would have been able to do, had the Products been labeled accurately. Clorox was also motivated to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

8.      This is a proposed class action brought by Plaintiffs, individually and on behalf of similarly situated individuals, against Clorox, seeking redress for Defendant's unjust, unfair, and deceptive practices in misrepresenting the environmental and other benefits of the Products in violation of California and New York law.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over the parties in this case. Plaintiff Cooper is a citizen of California within this District, and by filing this Complaint, Plaintiffs consent to this Court having personal jurisdiction over them. Defendant is a citizen of California and of this District. Defendant's principal place of business is within this District and Defendant purposefully avails itself of the laws of California to market, promote, distribute, and sell the Products to consumers in California and this District.

10.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act

CLASS ACTION COMPLAINT

("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class is comprised of at least 100 members, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

11.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

**Intradistrict Assignment**

12.     Assignment to the Oakland Division is appropriate under Civil L.R. 3-2(c) and (d) because a substantial part of the events or omissions that give rise to the claim – including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products – occurred within the Counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo, and Sonoma.

**PARTIES**

13.     Plaintiff Adam Cooper is an individual consumer who, at all relevant times, was a citizen of San Francisco County, California. Plaintiff Cooper purchased Clorox Green Works compostable cleaning wipes in "Original Fresh" scent from the Safeway store at 298 King Street, San Francisco, California 94107 several times in 2016, during the class period. In deciding to purchase the Products, Plaintiff Cooper read and relied on Defendant's false, misleading, and deceptive representations that those Products were "naturally derived," "green," environmentally sound, and safer alternatives to other cleaning products. Had Plaintiff Cooper known that the statements he relied on were false, misleading, deceptive, and unfair, he would have not purchased any Green Works products, or would not have paid the price he paid for the Products he purchased.

CLASS ACTION COMPLAINT

14.     Plaintiff Cooper has a young child, and purchasing organic, all natural, or plant-based products is a priority for him. Plaintiff Cooper would consider purchasing the Products again, if the labels were corrected and he could trust that they were correct. He also has a strong interest in ensuring honesty in the marketplace for products advertised as natural.

15.     Plaintiff Ryan Matuszewski is an individual consumer who, at all times material hereto, was a citizen of New York state. Plaintiff Matuszewski purchased Clorox Green Works multi-surface cleaner from a Target Store located in Brooklyn, New York. Plaintiff Matuszewski viewed and relied upon Defendant's "naturally derived" and "green" representations when purchasing the Products. Had Plaintiff Matuszewski known the truth about Defendant's products, he would not have purchased any Green Works products or would not have paid the price he paid for the Products he purchased. Plaintiff Matuszewski prefers products that are environmentally friendly and made of natural ingredients. Plaintiff Matuszewski would consider purchasing the Products again, if the labels were corrected and he could trust that they were correct. He also has a strong interest in ensuring honesty in the marketplace for products advertised as natural.

16.     Defendant The Clorox Company is a Delaware corporation with its principal place of business at 1221 Broadway, Oakland, California 94612. Defendant owns the "Green Works" brand and manufactures, markets, and distributes the Products throughout California, New York, and the United States.

## SUBSTANTIVE ALLEGATIONS

### A. The Products

17.     The term "Products," as used herein refers to the following Green Works products manufactured, marketed, and distributed by Clorox:

a)   Green Works multi-surface cleaner,

b)   Green Works multi-surface cleaner lemon scent,

c)   Green Works all-purpose cleaner,

CLASS ACTION COMPLAINT

1      d)  Green Works all-purpose cleaner lemon scent,

2      e)  Green Works cleaning wipes,

3      f)  Green Works compostable cleaning wipes,

4      g)  Green Works compostable cleaning wipes water lily scent,

5      h)  Green Works glass & surface cleaner,

6      i)  Green Works glass cleaner,

7      j)  Green Works bathroom cleaner,

8      k)  Green Works toilet bowl cleaner,

9      l)  Green Works dishwashing liquid,

10      m) Green Works dishwashing liquid water-lily scent,

11      n)  Green Works dishwashing liquid tangerine scent,

12      o)  Green Works dishwashing liquid free & clear scent,

13      p)  Green Works Manual Pot & Pan Detergent

14      q)  Green Works laundry detergent,

15      r)  Green Works laundry detergent free & clear scent,

16      s)  Green Works chlorine-free bleach,

17      t)  Green Works laundry stain remover,

18      u)  variations in size, scent, packaging, use, concentration, and formulation of the above-
19          listed products, and

20      v)  other Green Works products marketed as "naturally derived," "green," or in other
21          similar manners but containing unnatural and/or harmful ingredients.

22      **B. <u>Clorox's Greenwashing Marketing Scheme</u>**

23      18.    Seeking to profit on consumers' desire to use natural, environmentally sound, and

24 safer cleaning products as alternatives to other household cleaning products, Defendant markets

25 the Products as "green" and "naturally derived," representing that they provide significant

26 environmental, health, and safety benefits that other cleaning products do not.

27

28

19.    After just a year on the market, Clorox's Green Works products became the top-selling line of cleaners labeled "natural," capturing 42 percent of the natural cleaners market and generating an estimated $200 million in annual revenue.[1]

20.    The Products are sold in a variety of outlets, including Rite-Aid, Wal-Mart, Target, Kmart, and other health food stores, grocery stores, drug stores, and online retailers.

21.    The front labels for each of the Products have always borne the prominent phrase "Green Works" or "green works."

22.    On some of the Products Clorox previously qualified its "naturally derived" claims by stating that only a certain percentage of the Products are "naturally derived."  As an example, below is an image of an older label stating that the product is only "99% naturally derived":



---

[1] *See Clorox's Green Line Takes 42% of Natural Cleaners Market*, EnvironmentalLeader.com Jan. 13, 2009, http://www.environmentalleader.com/2009/01/13/cloroxs-green-line-takes-42-of-natural-cleaners-market/ (last visited Jun. 15, 2017).

CLASS ACTION COMPLAINT

23.    Defendant has since changed the Products' labeling to a manner that is misleading. Today, Defendant's labels simply read "naturally derived" and do not include any additional qualifying statements or percentages to substantiate this misleading term.

24.    Labeling the products as "naturally derived" is deceptive and misleading, especially considering that Defendant's labels previously included additional substantiating information.

25.    Additionally, although Defendant admits that many of the Products contain synthetic fragrances, the packaging uses natural "green" images including leaves and flowers to symbolize the scents to lure consumers who are concerned about the use of chemicals and harmful substances. For example, on Defendant's Multi-Surface Cleaner product, the "Original Fresh" scent is represented by a green leaf, even though the fragrances are synthetically produced.

26.    Defendant admits on its website that the Products' labels are misleading. Defendant's website provides additional information regarding the "natural" qualities of their products: "Like anything that's natural, the naturally derived ingredients in our products can go bad over time. That's why we add a small amount of preservatives (less than 0.5%) to keep our products fresh and effective."[2]

27.    Regarding the types of preservatives used, Defendant's website admits that the preservatives are neither natural nor derived from natural ingredients: "We're still working hard to find natural alternatives for our fragrances and preservatives, so the entire line can be 100% natural."[3]

---

[2] *See* Clorox Green Works Multi-Surface Cleaner, https://www.greenworkscleaners.com/product/product-detail/multi-surface-cleaner/ (last visited Jun. 15, 2017).

[3] *See* Clorox Green Works Frequently Asked Questions, https://www.greenworkscleaners.com/faq/#DrXxKK2P4BfODdoo.99 (last visited Jun. 15, 2017).

CLASS ACTION COMPLAINT

28.     Defendant further highlights the "green" and "naturally derived" aspect of the Products by placing a flower image on the label for each of the Products, as seen in the representative image below:



29.     The terms "green" and "naturally derived" convey to reasonable consumers that a product has certain benefits over other products – in particular, that a product is natural and non-toxic. Reasonable consumers trust that, when companies designate products as "green" or "naturally derived," the companies are doing so to convey that the products only contain non-

9

toxic and natural substances. (Otherwise, the terms "green" and "naturally derived" would be meaningless.)

### C. The Truth About Unnatural and Hazardous Ingredients in the Products

30.    The Products actually contain a host of unnatural, allergenic, and potentially hazardous ingredients that reasonable consumers would not expect in products that are marketed as "green" or "naturally derived."

31.    A chart outlining the known unnatural or environmentally harmful ingredients in the Products is included below:

| Ingredient: | Laundry Detergent | All-Purpose Cleaner | Bathroom Cleaner | Chlorine-Free Bleach | Compostable Cleaning Wipes | Dishwashing Liquid | Glass & Surface Cleaner | Glass Cleaner | Pump 'n Clean™ Kitchen & Dish Cleaner | Toilet Bowl Cleaner |
|---|---|---|---|---|---|---|---|---|---|---|
| Boric Acid | X | | | | | | | | | |
| Caprylyl/Capryl Glucoside | | X | X | | X | X | X | X | X | X |
| Citric Acid | | | X | X | X | X | | | X | X |
| d-Limonene | | X | X | | | X | X | | X | X |
| Dimethicone/Silica Antifoam | | | | | X | | | | | |
| Fragrance | X | X | X | X | X | X | X | X | X | X |
| Artificial Dyes | X | X | | | | X | | X | X | X |
| Methylisothiazolinone | X | X | | | X | X | | | | |
| Sodium Borate | X | | | | | | | | | |
| Sodium Lauryl Sulfate | X | | | | X | X | | | | |

CLASS ACTION COMPLAINT

32.     Although the complete ingredient list and the production process for each ingredient are known only to the Defendant, many of the ingredients used in the Products are synthetic, unnatural, and potentially dangerous to the environment and the user of the Products.

33.     Some of the Products contain a combination of the following dyes: Liquitint Blue HP Dye, Liquitint Bright Yellow Dye, Liquitint Brilliant Orange Dye, and Liquitint Yellow LP Dye. Clorox has acknowledged these ingredients are artificial: "All Green Works products are 95% to 99% naturally derived. . . . So what's in the other 1% to 5%?  . . . A combinations of preservatives, fragrances and dyes makes up a very small percentage of our ingredients list."[4]

34.     Many of the Products also contain unspecified fragrances, which may or may not be naturally derived or harmful. Defendant does not provide specific details about the fragrances on the labeling, but includes instructions to the consumer to consult Defendant's "Ingredients Inside" website. This website does not clarify which fragrances used in the products, but instead provides a list of over a thousand ingredients that may be listed as "fragrances" in the Products.[5] Among the few fragrances identified on the label by Defendant is D-Limonene, which has high acute toxicity to aquatic life and is a recognized skin allergen.

35.     Reasonable consumers seeking "green" and "naturally derived" products would be surprised to learn that Defendant's compostable wipes contain the silicone-based anti-

---

[4] *See* Clorox Green Works Multi-Surface Cleaner, https://www.greenworkscleaners.com/product/product-detail/multi-surface-cleaner/ (last visited Jun. 15, 2017); *see also* Clorox Green Works Frequently Asked Questions, https://www.greenworkscleaners.com/faq/#DrXxKK2P4BfODdoo.99 (last visited Jun. 15, 2017) ("We're still working hard to find natural alternatives for our fragrances and preservatives. . . .").

[5] *See* Clorox Ingredients Inside: Fragrances, https://www.thecloroxcompany.com/brands/what-were-made-of/fragrances/ (last visited Jun. 15, 2017).

CLASS ACTION COMPLAINT

foaming agent Dimethicone. Dimethicone is not biodegradable, even though the cleaning wipes are marketed as "compostable," which conveys to consumers that the cleaning wipes are "biodegradable."

36.     Upon information and belief, the type of citric acid used in the Products is also derived synthetically. Most citric acid used for industrial purposes is synthetic.[6]

37.     Methylisothiazolinone ("MI") is listed as a pesticide by the United States Environmental Protection Agency and is described as "moderately to highly toxic to freshwater and estuarine/marine organisms."[7] MI is also frequently added to products to act as a preservative. It is associated with skin toxicity, immune system toxicity, and allergic reactions and may be a neurotoxin. Defendant admits that the preservatives in the Products are not "naturally derived."[8]

38.     MI has been linked what is called an "epidemic" of painful skin allergies, including rashes, blistering, swelling, redness, and hives.[9] MI contact allergies are rising

---

[6] *See* American Academy of Allergy Asthma & Immunology: Ask the Expert, Dec. 9, 2013 http://www.aaaai.org/ask-the-expert/citric-acid-mold-allergy (last visited Jun. 15, 2017).

[7] U.S. Environmental Protection Agency, Reregistration Eligibility Decision (RED)— Methylisothiazolinone. EPA738-R-98-012 (1998), *available at* http://archive.epa.gov/pesticides/reregistration/web/pdf/3092.pdf (last visited Jun. 15, 2017).

[8] *See* Clorox Green Works Multi-Surface Cleaner, https://www.greenworkscleaners.com/product/product-detail/multi-surface-cleaner/ (last visited Jun. 15, 2017), *see also* Clorox Green Works Frequently Asked Questions, https://www.greenworkscleaners.com/faq/#DrXxKK2P4BfODdoo.99 (last visited Jun. 15, 2017) ("We're still working hard to find natural alternatives for our fragrances and preservatives. . . .").

[9] *See, e.g.*, Claire Duffin, *The Epidemic in the Bathroom: Manufacturers Told to Remove Chemical Linked to Skin Allergies*, The Telegraph (Dec. 14, 2014 10:00 PM), http://www.telegraph.co.uk/news/health/10517988/The-epidemic-in-the-bathroommanufacturers-told-to-remove-chemical-linked-to-skin-allergies.html.

dramatically.[10] The rapidly increasing rates of allergic reactions to MI resulted in the American Contact Dermatitis Society naming MI as the contact allergen of the year in 2013.[11] Some studies now put the percentage of consumers sensitized to MI as high as 10% of the population or more, a number that continues to rise.[12]

39.    MI is neither "green" nor "naturally derived." MI is produced by the controlled chlorination of dimethyldithiodipropionamide (DPAM) in solvent, followed by neutralization by extraction into water. Notwithstanding the often severe reactions suffered by the significant percentage of individuals who have used MI, Defendant fails to include any type of notice informing consumers that this ingredient is a known skin allergen.

40.    Sodium lauryl sulfate ("SLS") is synthesized through a multi-step process, and not acquired from natural sources. Many consumers who purchase "green" or "naturally derived" products specifically seek to avoid SLS. It is a known skin irritant. Additionally, it has other potential hazards, including aquatic toxicity. The International Programme on Chemical Safety advises SLS should not be permitted to enter into the environment.[13]

---

[10] *See, e.g.*, US National Library of Medicine National Institutes Of Medicine National Institutes of Health: Methylchloroisothiazolinone/methylisothiazolinone and methylisothiazolinone allergies can be detected by 200 ppm of methylchloroisothiazolinone/methylisothiazolinone patch test concentration, http://www.ncbi.nlm.nih.gov/pubmed/24819287 (2014).

[11] *See* Aria Vazirnia and Sharon E. Jacob, *Review ACDS' Allergen of the Year 2000-2015*, The Dermatologist (Nov. 2014), http://www.the-dermatologist.com/content/review-acds%E2%80%99-allergen-od-year-2000-2015.

[12] *See, e.g.*, Graham A. Johnston, *The Rise in Prevalence of Contract Allergy to Methylisothiazolinone in the British Isles*, Wiley Online Library (March 14, 2014), http://onlinelibrary.wiley.com/doi/10.1111/cod.12185/abstract (last visited Jun. 15 2017); *see also* Rachel Abrams, *Growing Scrutiny for an Allergy Trigger Used in Personal Care Products*, *The New York Times* (Jan. 23, 2015), *available at* http://nyti.ms/1xOLmdp (last visited Jun. 15, 2017) (describing how use of MI in consumer products has exploded in the past decade, creating widespread and serious allergic reactions including contact dermatitis).

[13] The International Labour Org., International Chemical Safety Card for Sodium Lauryl Sulfate, *available at*

CLASS ACTION COMPLAINT

41.     Upon information and belief, boric acid, sodium borate, and Capryly/Capryl Glucoside are not environmentally sound or "green." Chronic exposure to Boric acid and Sodium Borate is known to cause developmental/reproductive adverse effects, and The European Union Ecolabel program reports that Caprylyl/Capryl Glucoside has moderate acute toxicity to aquatic life.

42.     Accordingly, a reasonable consumer would not deem the Products containing the above-listed ingredients to be "naturally derived" or "green."

43.     To label the Products as "green" and "naturally derived" creates consumer deception and confusion. A reasonable consumer purchases the Products believing that they are "naturally derived" and "green" based on the Products' labeling and advertising. However, a reasonable consumer would not deem the Products as "naturally derived" or "green" if he or she knew that the ingredients contained in the Products are in fact synthetic or harmful to the user's health or the environment.

44.     None of these ingredients are disclosed on the front label of the packaging where Defendant makes the prominent "green" and "naturally derived" claims.

45.     Because the Products contain unnatural ingredients, Defendant's claims that the Products are "green" or "naturally derived" are false, misleading, and designed to deceive consumers into purchasing the Products. This fact alone, that the Products are not natural, yet marketed and distinguished primarily upon this characteristic, is sufficiently deceiving to the consumer. The fact that evidence tends to indicate that Products' contents are hazardous to humans and the environment only highlights Defendant's deception.

**D. Reasonable Consumer Purchase Defendant's Products Believing That They Are "Naturally Derived" and/or "Green."**

http://www.ilo.org/dyn/icsc/showcard.display?p_lang=en&p_card_id=0502&p_version=1 (last visited Jun. 15, 2017).

14

CLASS ACTION COMPLAINT

46.    As described above, many of the ingredients contained in Defendant's products are the result of complex, non-natural processes. The end products are substances that do not exist in in nature.

47.    Despite the inclusions of the above described highly processed and/or non-natural ingredients, Defendant labeled the products as "naturally derived" and "green" without providing further clarification on the Products' labels.

48.    Reasonable consumers, including Plaintiffs, purchased the Products based upon the belief that they were "naturally derived" and/or "green." However, a reasonable consumer would not consider products containing highly processed and non-natural ingredients as "naturally derived" or "green." Further, additional information necessary to substantiate the "naturally derived" claim is not available on Defendant's labels.

49.    Defendant's prominent representations on the packaging for the Products deceptively mislead consumers into believing that Clorox's Products are "naturally derived," "green," environmentally sound, and relatively safer product alternatives to other offerings in the same product category. The ingredients present in the Products do not come close to matching a reasonable consumer's expectations resulting from the company's advertised benefits, particularly given the unnatural and potentially hazardous substances in the Products.

50.    Defendant's claims that the Products are "naturally derived" and "green" are false and misleading.

51.    Defendant has profited enormously from its false and misleading representation that its Products are "naturally derived" and "green."  The purpose of this action is to put an end to Clorox's deceptive marketing of the Products and to provide consumers with monetary relief for Defendant's deceptive and misleading product claims.

## CLASS ALLEGATIONS

52.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated individuals within the United States (the "Class" or the "Nationwide Class"), defined as follows:

> All consumers who purchased the Products that were labeled as "natural," "naturally derived," and/or "green" within the United States during the period from four years before the filing of this complaint until the date of class certification.

53.     Additionally, Plaintiff Cooper brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other similarly situated California citizens (the "California Subclass") defined as follows:

> All consumers who purchased the Products that were labeled as "natural," "naturally derived," and/or "green" within California during the period from four years before the filing of this complaint until the date of class certification.

54.     Additionally, Plaintiff Matuszewski brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated New York Citizens (the "New York Subclass"), defined as follows:

> All consumers who purchased the Products that were labeled as "natural," "naturally derived," and/or "green" within New York during the period from six years before the filing of this complaint until the date of class certification.

55.     Upon information and belief, the scope of these Class and Subclass definitions, including temporal scope, may be further refined after discovery of Defendant's and/or third party records.

56.     There are substantial questions of law and fact common to all members of the Nationwide Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

> (a)     whether Defendant misrepresented and/or failed to disclose material facts concerning its Green Works products;
>
> (b)     whether Defendant's conduct was unfair and/or deceptive;
>
> (c)     whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would

be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Class;

(d)    whether Defendant's conduct constitutes a breach of express warranty and/or implied warranty; and

(e)    whether Plaintiffs and the Class have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

57.    With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include:

(a) whether Defendant advertised its Green Works Products with the intent not to sell them as advertised in violation of California Civil Code § 1770(a)(7);

(b) whether Defendant represented on packaging for the Products that the Products had characteristics, ingredients, uses, or benefits that they do not have in violation of California Civil Code §1770(a)(5);

(c) whether Defendant is subject to liability for violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1784;

(d) whether Defendant has violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500-17536;

(e) whether Defendant has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and

(f) whether the Class is entitled to an award of restitution pursuant to California Business and Professions Code § 17203.

58.    With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individuals members include:

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(a) whether, in violation of § 349 of the New York General Business Law ("GBL"), Defendant engaged in deceptive acts or practices; and

(b) whether, in violation of GBL § 350, Defendant engaged in false advertising.

59.     Plaintiffs' claims are typical of the claims of the Nationwide Class. Plaintiffs are members of a well-defined class of similarly situated persons and the members of the Nationwide Class were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the Nationwide Class are ascertainable from Plaintiffs' description of the class, Defendant's records, and records of third parties accessible through discovery.

60.     Plaintiff Cooper's claims are typical of the claims of the California Subclass. Plaintiff Cooper is a member of a well-defined class of similarly situated persons and the members of the California Subclass were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the California Subclass are ascertainable from Plaintiff Cooper's description of the class, Defendant's records, and records of third parties accessible through discovery.

61.     Plaintiff Matuszewski's claims are typical of the claims of the New York Subclass. Plaintiff Matuszewski is a member of a well-defined class of similarly situated persons and the members of the New York Subclass were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the New York Subclass are ascertainable from Plaintiff Matuszewski's description of the class, Defendant's records, and records of third parties accessible through discovery.

62.     Plaintiff Cooper and Plaintiff Matuszewski will fairly and adequately protect the interests of the Nationwide Class, and the California Subclass and the New York Subclass, respectively, and have no interests which are antagonistic to the claims of the Nationwide Class, California Subclass or New York Subclass. Plaintiffs will vigorously pursue the claims of the Class and Subclasses.

63.     Plaintiffs have retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising and "greenwashing."

CLASS ACTION COMPLAINT

Plaintiffs' counsel have successfully represented plaintiffs in complex class actions and currently represent other plaintiffs in several similar complex class action litigations involving false advertising and/or "greenwashing."

64.     A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiffs and the Class and Subclasses are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class and Subclass members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually and the disposition of this case and as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiffs' and the Class and Subclass members' claims is manageable. Unless the Class and Subclasses are certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

66.     No member of the Class or either Subclass has a substantial interest in individually controlling the prosecution of a separate action.

67.     The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, the California Subclass, and the New York Subclass thereby making appropriate final injunctive or equitable relief with respect to the Class, the California Subclass and the New York Subclass as a whole.

68.     The prosecution of separate actions by members of the Class, the California Subclass, and the New York Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin

1    Defendant from performing the challenged acts, whereas another might not. Additionally,

2    individual actions could be dispositive of the interests of the Class, the California Subclass, and

3    the New York Subclass even where certain Class, California Subclass or New York Subclass

4    members are not parties to such actions.

5            69.    Defendant's conduct is generally applicable to the Class, the California Subclass

6    and the New York Subclass as a whole and Plaintiffs seek, *inter alia*, equitable remedies with

7    respect to the Class, the California Subclass, and the New York Subclass as a whole.  As such,

8    Defendant's systematic policies and practices make declaratory relief with respect to the Class,

9    the California Subclass, and the New York Subclass as a whole appropriate.

10           70.    Plaintiffs know of no difficulty that will be encountered in the management of this

11   litigation, which would preclude its maintenance of a class action.

12                           **CAUSES OF ACTION**

13                              **COUNT I**

14                  **(Unfair and Deceptive Acts and Practices in**

15           **Violation of the California Consumers Legal Remedies Act,**

16               **on Behalf of the California Subclass)**

17           71.    Plaintiff Cooper incorporates by reference and realleges herein all paragraphs

18   alleged above.

19           72.    This cause of action is brought pursuant to California's Consumers Legal

20   Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

21           73.    Plaintiff Cooper and the other members of the California Subclass are

22   "consumers," as the term is defined by California Civil Code § 1761(d), because they bought

23   the Products for personal, family, or household purposes.

24           74.    Plaintiff Cooper, the other members of the California Subclass, and Defendant

25   have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

26           75.    The conduct alleged in this Complaint constitutes unfair methods of competition

27   and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was

28

CLASS ACTION COMPLAINT

undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

76.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff Cooper and the other members of the California Subclass that the Products are naturally derived, green, environmentally sound, and relatively safe products compared to other cleaning products.

77.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

78.     Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff Cooper seeks an order of this Court that includes, but is not limited to, an order requiring Defendant to remove and/or refrain from making representations on the Products' packaging representing that the Products are natural or naturally derived and unqualifiedly environmentally sound.

79.     Plaintiff Cooper and the other California Subclass members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

80.     The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff Cooper and the other members of the California Subclass.

81.     CLRA § 1782 NOTICE. On April 14, 2017, a CLRA demand letter was sent to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. Defendant received the letter on April 20, 2017, but has failed to comply with the letter. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and all other members of the Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

## COUNT II

### (Violations of California's False Advertising Law,

### on Behalf of the California Subclass)

82.   Plaintiff Cooper incorporates by reference and realleges herein all paragraphs alleged above.

83.   As alleged more fully above, Defendant has falsely advertised the Products by falsely claiming that the Products are unqualifiedly naturally derived, green, and environmentally sound.

84.   At all material times, Defendant engaged in a scheme of offering the Products for sale to Plaintiff Cooper and the other members of the California Subclass within the State of California and nationwide through, *inter alia*, commercial marketing and advertising, the Internet, the Products' packaging and labeling, and other promotional materials and offers for sale of the Products.

85.   The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising, and therefore constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

86.   Said advertisements and inducements were made within the State of California and come within the definition of advertising contained in the FAL in that such promotional materials were intended as inducements to purchase the Products and are statements disseminated by Defendant to Plaintiff Cooper and the other California Subclass members that were intended to reach Plaintiff Cooper and the other California Subclass members. Defendant knew, or in the exercise of reasonable care, should have known, that these representations were misleading and deceptive.

87.   The above acts of Defendant did and were likely to deceive reasonable consumers, including Plaintiff Cooper and the other members of the California Subclass, by obfuscating the nature, quality, and ingredients of the Products, in violation of the "misleading" prong of the FAL.

88.   Plaintiff Cooper and the other members of the California Subclass have suffered

CLASS ACTION COMPLAINT

1    injury in fact and have lost money or property as a result of Defendant's violations of

2    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

3         89.    Pursuant to California Business and Professions Code §§ 17203 and 17535,

4    Plaintiff Cooper and the California Subclass seek an order of this Court that includes, but is

5    not limited to, requiring Defendant to:

6              (a) remove and refrain from making representations on the Products' packaging

7                  representing that the Products provide an unqualified level of "natural"

8                  benefits; and

9              (b) remove and refrain from making representations on the Products' packaging

10                 representing that the Products are unqualifiedly environmentally sound and

11                 naturally derived.

12                              **COUNT III**

13                  **(Violation of California's Unfair Competition Law,**

14                    **on Behalf of the California Subclass)**

15        90.    Plaintiff Cooper incorporates by reference and realleges herein all paragraphs

16    alleged above.

17        91.    By committing the acts and practices alleged herein, Defendant has violated

18    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to

19    the California Subclass as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

20        92.    Defendant has violated the UCL's proscription against engaging in *unlawful*

21    conduct as a result of:

22              (a) violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as

23                  alleged above; and

24              (b) violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged

25                  above.

26        93.    Defendant's acts and practices described above also violate the UCL's

27    proscription against engaging in *fraudulent* conduct.

28        94.    As more fully described above, Defendant's misleading marketing, advertising,

packaging, and labeling of Products is likely to deceive reasonable consumers. Indeed, Plaintiff Cooper and the other members of the California Subclass were unquestionably deceived regarding the environmental and natural benefits of the Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresent and omit the true facts concerning the benefits of the Products. Those acts are fraudulent business practices.

95.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

96.     Plaintiff Cooper and the other California Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

97.     There is no benefit to consumers or competition from deceptively marketing and labeling products like the Products, which purport to be natural, environmentally sound, and safer alternatives to traditional offerings when these unqualified claims are false.

98.     Plaintiff Cooper and the other California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

99.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff Cooper and the other members of the California Subclass.

100.   Defendant's violations of the UCL continue to this day.

101.   Pursuant to California Business and Professional Code § 17203, Plaintiff Cooper and the California Subclass members seek an order of this Court that, *inter alia*, requires Defendant to:

(a)  remove and refrain from making representations on the Products' packaging that the Products provide an unqualified level of "natural" benefits;

(b)  remove and refrain from making representations on the Products' packaging that the Products are unqualifiedly environmentally sound and naturally derived;

(c)  provide restitution to Plaintiff Cooper and the other California Subclass members;

(d)  disgorge all revenues obtained as a result of violations of the UCL; and

(e)  pay the attorney fees and costs of Plaintiff Cooper and the California Subclass.

## COUNT IV

### (Violation of New York General Business Law § 349, on Behalf of the New York Subclass)

102.  Plaintiff Matuszewski incorporates by reference and realleges herein all paragraphs alleged above.

103.  Defendant engaged in false and misleading marketing concerning the Products.

104.  As fully alleged above, by advertising, marketing, distributing, and/or selling the Products to Plaintiff Matuszewski and other members of the New York Subclass, Defendant engaged in and continues to engage in deceptive acts and practices.

105.  Plaintiff Matuszewski and the other members of the New York Subclass seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the New York Subclass members will be irreparably harmed unless the unlawful actions of Defendant are enjoined, in that Defendant will continue to falsely and misleadingly advertise the safety and environmental benefits of the Products.  Towards that end, Plaintiff Matuszewski and the New York Subclass request an order granting them injunctive relief in the form of an order prohibiting Defendant from representing that the Products are safer or environmentally desirable, unless and until the harmful chemicals are removed.

106.   In this regard, Defendant has violated, and continues to violate, New York General Business Law ("GBL") § 349, which makes deceptive acts and practices unlawful.  As a direct and proximate result of Defendant's violation of GBL § 349 as described above, Plaintiff Matuszewski and the other members of the New York Subclass have suffered damages in an amount to be determined at trial.

107.   Wherefore Plaintiff Matuszewski, on behalf of the New York Subclass, prays for relief as set forth herein.

<u>COUNT V</u>

**(Violation of New York General Business Law § 350,**

**on Behalf of the New York Subclass)**

108.    Plaintiff Matuszewski incorporates by reference and realleges herein all paragraphs alleged above.

109.   Defendant engaged in false advertising concerning the Products.

110.   As fully alleged above, by advertising, marketing, distributing, and/or selling the Products to Plaintiff Matuszewski and other members of the New York Subclass, Defendant engaged in and continues to engage in false advertising.

111.   Plaintiff Matuszewski and the other members of the New York Subclass seek to enjoin such unlawful false advertising as described above.  Each of the New York Subclass members will be irreparably harmed unless the unlawful actions of Defendant are enjoined, in that Defendant will continue to falsely and misleadingly advertise the safety and environmental benefits of the Products.  Towards that end, Plaintiff Matuszewski and the New York Subclass request an order granting them injunctive relief in the form of an order prohibiting Defendant from representing that the Products are environmentally desirable or safer, unless and until the harmful chemicals are removed.

112.   In this regard, Defendant has violated, and continues to violate, GBL § 350, which makes false advertising unlawful.  As a direct and proximate result of Defendant's violation of GBL § 350 as described above, Plaintiff Matuszewski and the other members of the New York Subclass have suffered damages in an amount to be determined at trial.

CLASS ACTION COMPLAINT

113.   Wherefore Plaintiff Matuszewski, on behalf of the New York Subclass, prays for relief as set forth herein.

<u>**COUNT VI**</u>

**(Unjust Enrichment)**

114.   Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

115.   Plaintiffs and members of the Nationwide Class conferred benefits on Defendant by purchasing the Products at a price greater than they would pay for cleaners that are not "naturally derived" or "green."

116.   Defendant has knowledge of such benefits.

117.   Defendant's representations that the Products are "naturally derived" or "green" constitute affirmations of fact and are part of the basis of the bargain between Defendant and purchasers of the Products.

118.   Defendant made the above-referenced representations in order to induce Plaintiffs and the Nationwide Class members to purchase, and to pay a premium price for, the Products, and Plaintiffs and the Nationwide Class members relied on the representations in purchasing the Products.

119.   As a result of Defendant's deceptive, fraudulent and misleading labeling, advertising, and marketing of the Products, the Plaintiffs and other Nationwide Class members were induced to pay the purchase price and pay a premium for the Products.

120.   Plaintiffs and members of the Nationwide Class were unjustly deprived of payments because they would not have purchased, or would have purchased less of, or would have paid less for the Products if true facts had been known.

121.   Defendant was enriched at the expense of Plaintiffs and the other Nationwide Class members, thereby creating a quasi-contractual obligation on Defendant to restore those ill-gotten gains to Plaintiffs and the Class members.

122.   Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and the other

CLASS ACTION COMPLAINT

Nationwide Class members, in light of the fact that the Products purchased by Plaintiffs and the other Nationwide Class members were not what Defendant purported them to be.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the other Nationwide Class members for the monies paid to Defendant for the Products.

123.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Nationwide Class members are entitled to restitution or restitutionary disgorgement, in an amount to be proven at trial.

124.   Wherefore Plaintiffs, on behalf of the Nationwide Class, pray for relief as set forth herein.

## COUNT VII

### (Based on Breach of Express Warranty)

125.   Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

126.   Defendant's representations that the Products are "naturally derived" and "green" constitute affirmations of fact.

127.   Defendant's representations that the Products are "naturally derived" and "green" relate to the goods and became part of the basis of the bargain between Defendant and purchasers of the Products.

128.   Plaintiffs and other Nationwide Class members purchased the Products, believing them to conform to the express warranties.

129.   As set forth above, Defendant's statements concerning the Products are false.

130.   All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiffs and the other Nationwide Class members.

131.   Defendant breached its express warranties about the Products because, as alleged above, the Products are not "naturally derived" or "green."  Defendant therefore breached the applicable state statutes.

CLASS ACTION COMPLAINT

132.   As a result of Defendant's breaches of express warranty, Plaintiffs and the other Nationwide Class members were damaged in the amount of the purchase price they paid for the Products, or in the amount of they paid based upon the misrepresentations, in amounts to be proven at trial.

133.   Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and the other members of the Nationwide Class, placed Defendant on notice thereof.

134.   As a proximate result of the breach of warranties by Defendant, Plaintiffs and the other members of the Nationwide Class did not receive goods as warranted. Among other things, Plaintiffs and members of the Nationwide Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiffs and the Nationwide Class members known the true facts, they either would not have purchased the products, would have purchased fewer products, or would not have been willing to pay the price Defendant charged for the products.

135.   Wherefore Plaintiffs, on behalf of the Nationwide Class, pray for relief as set forth herein.

## COUNT VIII

### (Breach of Implied Warranty)

136.   Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

137.   Defendant's representations that the Products are "naturally derived" or "green" constitute affirmations of fact made with regard to the Products.

138.   Defendant's representations that the Products are "naturally derived" or "green" and Defendant's advertising and promotions for the Products are part of the basis of the bargain between Defendant and purchasers of the Products.

139.   Defendant's representations that the Products comprise "naturally derived" ingredients, and/or are "green" created and implied warranty of merchantability and fitness for the particular purpose for which the Products were marketed and sold.

CLASS ACTION COMPLAINT

140.   As set forth in the paragraphs above, Defendant's statements concerning the Products are false, and the Products are not fit for the particular purpose for which they were marketed and sold.

141.   Wherefore Plaintiffs pray for an injunction requiring Defendant to recall the Products currently on the market containing the ingredients in question, and if it choose not to remove such ingredients from the Products, to label all future Products in a manner that informs consumers of the presence of the ingredients and therefore does not create an implied warranty of merchantability and fitness for use as a "natural" or "green" cleaner, as well as all further relief set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the Nationwide Class, the California Subclass, and the New York Subclass as follows:

A.   An order certifying the proposed Nationwide Class, the California Subclass and, the New York Subclass; appointing Plaintiffs Cooper and Matuszewski as representatives of the Class; appointing Plaintiff Cooper as representative of the and the California Subclass; appointing Plaintiff Matuszewski as representative of the New York Subclass; and appointing Plaintiffs' undersigned counsel as Class counsel for the Class and Subclasses;

B.   A declaration that Defendant is financially responsible for notifying Class and Subclass members of the pendency of this suit;

C.   An order requiring proper, complete, and accurate labeling of the Products;

D.   An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for members of the California Subclass;

E.   An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for members of the California Subclass;

F.   An order enjoining Defendant's unlawful and deceptive acts and practices, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from using representations on Defendant's Products that the Products provide

CLASS ACTION COMPLAINT

an unqualified level of "natural" benefits and are unqualifiedly environmentally sound and naturally derived.

G.  Monetary damages and injunctive relief for members of the California Subclass pursuant to California Civil Code § 1780;

H.   Injunctive relief for members of the New York Subclass pursuant to GBL §§ 349 and 350, without limitation

I.   Monetary damages, injunctive relief, and statutory damages in the maximum amount provided by law;

J.   Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

K.  An order awarding Plaintiffs and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees and

L.  Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury for all claims so triable.

Dated:  August 21, 2017                    Respectfully submitted,

**RICHMAN LAW GROUP**

_____

Kim E. Richman (*Pro Hac Vice forthcoming*)
krichman@richmanlawgroup.com
Jaimie Mak (SBN 236505)
jmak@richmanlawgroup.com
535 Mission Street
San Francisco, California 94105
Telephone: (415) 259-5688
Facsimile: (718) 228-8522

Todd S. Garber
Bradley Silverman
**FINKELSTEIN, BLANKINSHIP, FREI-**

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PEARSON & GARBER, LLP**
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3283
Email: tgarber@fbfglaw.com

*Counsel for Plaintiffs*

CLASS ACTION COMPLAINT